**AFFIRM; and Opinion Filed June 3, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-11-00959-CR**

**JAMAL DESHUN APPLEWHITE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F11-00048-Y**

# MEMORANDUM OPINION

Before Justices Lang-Miers, Murphy, and Fillmore
Opinion by Justice Murphy

Jamal Deshun Applewhite appeals his conviction for aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West 2011). Appellant raises three issues challenging the legal sufficiency of the evidence and contending the trial court erred by allowing a jury to assume guilt in a second punishment trial following a mistrial. We affirm.

## BACKGROUND

Appellant pleaded not guilty to the charge of aggravated assault with a deadly weapon, a BB gun. The jury found appellant guilty, but could not reach a verdict on punishment. The trial court declared a mistrial and conducted a new trial on punishment only. A second jury assumed guilt, found an enhancement paragraph true, and assessed punishment at fifteen years in prison.

## DISCUSSION

### Issue One:  Legal Sufficiency of the Evidence

Appellant first challenges the sufficiency of the evidence to support the conviction for aggravated assault with a deadly weapon.  Specifically, he contends the evidence shows only the offense of criminal mischief.  He argues there was no testimony a BB gun was manifestly designed to inflict death or serious bodily injury, so the State relied on the manner of the gun's use or intended use as capable of causing death or serious bodily injury.  He states the complainant's fear was irrelevant; the question was whether the threat was made with the intent to place the complainant in fear of imminent bodily injury.  Appellant asserts the evidence shows only appellant's intent to damage the complainant's truck.

We review appellant's legal sufficiency challenge by considering all of the evidence in the light most favorable to the verdict; based on that evidence and reasonable inferences, we must determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).  Under this standard, the fact finder has full responsibility for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319.  We presume the fact finder resolved any conflicts in the evidence in favor of the verdict and defer to that determination.  *Id*. at 326.  Based on this standard, we do not reassess witness credibility.  *Id*. at 319.

To obtain a conviction against appellant as charged, the State was required to prove beyond a reasonable doubt that appellant intentionally or knowingly threatened the complainant with imminent bodily injury while using or exhibiting a deadly weapon, a BB gun.  *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2).  A deadly weapon is "anything that in the manner

of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West Supp. 2012).

The State presented five witnesses. Its first witness was Kristopher Barnes, the complainant. Barnes testified that around 7:00 p.m. on April 26, 2010, he was driving home from school, traveling southbound in the far left lane of Highway 635 in Mesquite, Texas. He described traffic as not "bumper-to-bumper" but congested. He was traveling around fifty-five miles per hour, and it was still light outside.

As Barnes was nearing the Oates exit, he noticed a yellow Crown Victoria swerve into his lane and cut him off. He slammed on his brakes to avoid hitting the vehicle. He also honked his horn, at which point the driver pulled "over in the lane beside [Barnes] and slowed down and pulled a gun and shot into the side of [his] truck." Barnes said both cars were traveling around fifty-five miles per hour at the time.

Barnes described the car as a bright yellow Crown Victoria with "push bumpers" and dealer's plates. All he saw when he looked over was a man driving the car with a gun in his hand; Barnes testified the man was pointing the gun in his direction. Barnes said he was "panicked" and thought the man was going to shoot him. He knew the shots hit the side of his truck because the noise was loud. He heard a thud and a noise like metal being hit. He slowed down immediately and pulled behind the Crown Victoria.

While behind the Crown Victoria, Barnes called 911 and gave the 911 dispatcher information about the car. Barnes then exited and, pursuant to instructions from the 911 dispatcher, met Mesquite Police Officer George Wayne Hensley nearby. Barnes described the events to Hensley, who also took photographs of Barnes's truck. The photographs were admitted as evidence. Using the photographs, Barnes showed the jury the indentations on his vehicle that resulted from the shots.

On cross-examination, Barnes agreed the window in his vehicle was not "busted" and nothing came into his truck. The three impact marks were near the back of Barnes's vehicle by the right rear wheel. He did not recall the placement of the shooter's hands on the gun.

Hensley testified next. He described the dispatch he received on April 26 regarding the shooting on Highway 635. The dispatch was a "10-18," which is a shooting in progress, involving a yellow "Crown Vic or a police-style car" that had pulled up beside a man and shot the vehicle. After Hensley obtained a description from Barnes, he relayed the information to officers, who found a vehicle matching the description. Barnes showed Hensley the dents in his vehicle. Hensley testified that at that point, Barnes believed he had been shot at with a pistol. Because of the small dents, Hensley thought it was a very small pistol or a BB gun that caused the damage. Hensley had Barnes follow him to the Mesquite Police Department where he took pictures of the vehicle. Hensley described the dents as marble-sized and deep "enough to dent the metal to remove the paint and make [Hensley] believe that, you know, possibly that [Barnes] was thinking that his vehicle was getting hit by an actual, you know, pistol bullet."

On cross-examination, Hensley agreed to the description of the dents as "pea-size" and that they were not caused by a firearm. He testified it appeared someone wanted to inflict damage or pain on someone else and described it as "criminal mischief." He said a BB gun can be used as a deadly weapon.

Officer Matthew McCloud with the Mesquite Police Department testified that he was on patrol when he received a call of possible shots fired on Highway 635, with the vehicle exiting Town East Boulevard. Less than three minutes after receiving the dispatch, he noticed the vehicle entering a drive-thru. He and another officer conducted a "felony stop"; the officers "came out at gunpoint and pulled each person out of the car one by one." They patted down the two occupants. The driver was male, and the passenger was female.

–4–

After clearing the vehicle, the officers conducted a protective sweep of the car, during which they discovered two guns. McCloud testified the guns looked like "real guns," but once the officers "physically manipulated" them, they realized they were BB guns. McCloud described one of the guns as "CO2 powered," which means it has a CO2 cartridge inside the handle of the pistol and is more powerful than a pressurized BB gun. He did not know if the other gun was the same.

Mesquite Police Officer Jerry Allen Walzel testified he also received a dispatch on April 26. He arrived at the scene and waited for instructions from McCloud. Walzel identified the driver of the vehicle as appellant. After McCloud pulled appellant from the car and handcuffed him, Walzel walked around the car and observed two weapons in plain view. One weapon was in the backseat, and one was in the backseat pocket of the passenger side. Both guns were admitted as exhibits.

Walzel described one gun as a "Marksman BB gun" and demonstrated for the jury how to load the gun. Walzel also referenced a safety on the gun and a globe site that tracks light and is used on "most military weaponry, law enforcement weaponry, [and] any hunter's weaponry." Walzel said the second gun is loaded "like a real handgun." He said the gun was a military grade "Witness 1911 BB gun." He noted the gun had "all the same structure and everything as a real gun," including a "silver piece on the injector slide that makes it look like even more realistic." He said it "[l]ooks like a real gun," and if he were confronted with that weapon, he would have to use deadly force.

Walzel also addressed the circumstances of two cars traveling at a normal rate of speed on a highway and one being fired at by a BB gun. He described the situation as posing a "deadly experience." Walzel testified, based on his experience, that BB guns can be deadly weapons and cause serious bodily injury. Based on the facts presented in this case and what he had learned

through his investigation, Walzel opined a BB gun could be a deadly weapon in the manner used by appellant. On cross-examination, he agreed he did not know exactly what happened and could not say appellant was the shooter.

The State's final witness was appellant's former girlfriend, Yitora Wilson, who was with appellant in her father's yellow Crown Victoria on the day of the shooting. She said appellant was driving and she was reclined in her seat. She "got up" when she heard a horn blowing, and they exited the highway. She testified that the next thing she knew, they got pulled over. She did not know why they were being stopped until the officers separated them and referenced the guns.

Wilson identified the two guns admitted as exhibits as the gun appellant had and the other as one Wilson was "using." She said they had taken the guns to the park where appellant was trying to show her how to shoot. She described appellant's gun as shooting "just like a regular gun," stating "you just pull the trigger," and "it shoots pretty far and it has force." She said the other gun was hers and that it did not shoot far or have much force.

Wilson testified she and appellant were driving with the windows down on April 26 and stated she would not have heard appellant fire his gun. She denied firing a gun into Barnes's truck and did not see appellant with a gun in his hand. No one else was in the car with them. Wilson testified that when she heard the horn, she saw that appellant was "looking like he was mad" and "flipped the dude off."

The State rested after this testimony. Appellant did not testify and did not call any witnesses.

The evidence shows appellant pointed the gun at Barnes while traveling at approximately fifty-five miles per hour on a crowded highway. Appellant was mad and exhibited angry behavior. Barnes testified appellant fired a gun in his direction and the shots hit the car in

several locations. Both of the guns found in appellant's vehicle looked "real" to the police officers who examined the weapons. The jury also heard testimony that the BB gun identified as appellant's gun was capable of force. Walzel specifically testified he would have had to use deadly force if he had been fired at with one of the guns. Walzel also addressed the circumstance presented as posing a "deadly experience." He testified BB guns can be deadly weapons and can cause serious bodily injury.

Appellant argues that because Barnes did not "unequivocally say the gun was ever trained on him," all the evidence shows is the offense of criminal mischief. But it is not necessary that the complainant be placed in fear of imminent bodily injury; it is the appellant's threat, made with the intent to place the complainant in fear of bodily injury that constitutes the offense. *Trevino v. State*, 752 S.W.2d 735, 736–37 (Tex. App.—Eastland), *pet. dism'd*, 759 S.W.2d 142 (Tex. Crim. App. 1988). Such intent can be established through acts, words, and conduct. *Id.* at 737. Barnes testified that when he honked his horn and slammed on his brakes to avoid hitting appellant's vehicle, appellant slowed down, got into the lane beside Barnes, and pointed a gun in Barnes's direction. Based on appellant's conduct, Barnes thought appellant was going to shoot him with what he thought was a pistol.

Considering all of the evidence in the light most favorable to the verdict, including reasonable inferences, we conclude a rational fact finder could have found appellant intentionally or knowingly threatened Barnes with imminent bodily injury while using or exhibiting a deadly weapon. *Jackson*, 443 U.S. at 318-19; *see also* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). We overrule appellant's first issue.

**Issues Two and Three: Assumption of Guilt for Second Punishment Trial**

We address appellant's second and third issues together. He argues in his second issue the charge to the second jury contained egregious error because it assumed appellant had been

found guilty. In his third issue, he contends the trial court's mistrial included the guilty verdict and it was fundamental error for the second jury to assess punishment in the absence of a finding of guilt.

After the first jury was unable to agree on punishment, the trial court declared a mistrial. Appellant argues the mistrial was without any limitations. The State responds the trial court's authority to act was limited to those situations authorized by the constitution, statute, or common law. It argues the trial court had no discretion to order a mistrial on appellant's guilt once the jury reached the verdict, citing article 37.07, section 3(c) of the code of criminal procedure. That section provides:

> If the jury finds the defendant guilty and the matter of punishment is referred to the jury, the verdict shall not be complete until a jury verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment. In the event the jury shall fail to agree on the issue of punishment, a mistrial shall be declared only in the punishment phase of the trial, the jury shall be discharged, and no jeopardy shall attach. The court shall impanel another jury as soon as practicable to determine the issue of punishment.

TEX. CODE CRIM. PROC. ANN. ART. 37.07, § 3(c) (West Supp. 2012). The trial court had no discretion in following this provision—it is mandatory. *See Ex parte Douthit*, 232 S.W.3d 69, 72 (Tex. Crim. App. 2007) (noting most provisions in code of criminal procedure are mandatory based on "shall" and "must" language). Accordingly, the trial court's only authority was to grant a mistrial as to punishment. We overrule appellant's second and third issues.

Having overruled appellant's issues, we affirm the trial court's judgment.


/Mary Murphy/
MARY MURPHY
Do Not Publish                    JUSTICE
TEX. R. APP. P. 47

110959F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMAL DESHUN APPLEWHITE,
Appellant

No. 05-11-00959-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F11-00048-Y.
Opinion delivered by Justice Murphy.
Justices Lang-Miers and Fillmore
participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 3rd day of June, 2013.


/Mary Murphy/
MARY MURPHY
JUSTICE